IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SEIKO EPSON CORPORATION,                    3:09-CV-477-BR
a Japan corporation; EPSON
AMERICA, INC., a California                  OPINION AND ORDER
corporation; and EPSON
PORTLAND, INC., an Oregon
corporation;

       Plaintiffs,

v.

ABACUS 24-7 LLC,
an Arizona Limited Liability
Co.; eForCity Corporation, a
California corporation, dba
eForCity.com; R&L Imaging
Group, Inc., a California
corporation, fka IEM Consummables,
Inc.; Global Business Support
Systems, Inc.; XP Solutions
Properties, LLC, a Florida Limited
Liability Company, dba Clickinks.com;
Clickinks.com, LLC, a Florida Limited
Liability Company; Global Business
Support Systems, Inc., a Delaware
corporation dba PrintCountry.com;
Green Project, Inc., Joseph Wu; and
XP Solutions, LLC, dba Clickinks.com,

       Defendants.

1 - OPINION AND ORDER

**DAVID W. AXELROD**
**DEVON ZASTROW NEWMAN**
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. Fifth Ave, Suite 1900
Portland, OR 97204
(503) 222-9981
**HAROLD A. BARZA**
**J.D. HORTON**
**JAMES STEIN**
**JOSEPH M. PAUNOVICH**
**RYAN S. GOLDSTEIN**
**TIGRAN GULEDJIAN**
**VALERIE RODDY**
**JUSTIN BROWNSTONE**
**LANCE YANG**
**RACHAEL MCCRACKEN**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 624-7707

      Attorneys for Plaintiffs Seiko Epson Corporation;
      Epson America, Inc.; and Epson Portland, Inc.

**LEI MEI**
Mei & Mark LLP
1050 Connecticut Ave. N.W., 10th Floor
Washington D.C. 20036
(202) 256-1008

**SETH H. ROW**
Parsons Farnell & Grein LLP
1030 S.W. Morrison St
Portland, OR 97205
(503) 222-1812

**ELIZABETH H. RADER**
**YITAI HU**
Alston & Bird LLP
275 Middlesex Road, Ste 150
Menlo Park, CA 94025
(650) 838-2000

      Attorneys for Defendants Ninestar Technology
      Co. Ltd (formerly Ninestar Image Co. Ltd.);
      Ninestar Technology Company, Ltd.; and
      Dataproducts USA, LLC

2 - OPINION AND ORDER

**BROWN, Judge.**

This matter came before the Court on December 7, 2011, for a Supplemental *Markman* Hearing to construe the claim term "being compressingly contained" in the second limitation of Claim 83 and in dependent Claims 72 and 73 of U.S. Patent No. 5,5158,377 ('377 Patent) issued to Plaintiffs (collectively referred to as Seiko Epson).[1]

## STANDARDS

Patent claim terms are generally given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(*en banc*). "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. "A patent's specification is always highly relevant to the claim construction analysis." *Id.* at 1315.

When interpreting the legally operative meaning of a disputed term, the court may consider "both intrinsic (*e.g.*, the patent specification and file history) and extrinsic evidence," (*e.g.*, expert testimony and dictionary definitions). *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). *See also MBO Lab., Inc. v. Becton, Dickinson & Co.*, 474 F.3d

---

[1] On December 1, 2011, the United States Patent and Trademark Office notified Seiko Epson that it was reexamining whether Claims 83 and 84 of the '377 Patent are unpatentable based on prior art. That action does not have any immediate bearing on the pending matter.

1323, 1329 (Fed. Cir. 2007).

Intrinsic evidence such as the specification "is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.,* 415 F.3d at 1315.

Although extrinsic evidence "can shed useful light on the relevant art," it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Id.* at 1317 (internal citations omitted).

## DISCUSSION

Claim 83 of the '377 Patent describes:

> An ink-supply tank formed with an ink-supply delivery port having an opening for the passage of ink from said ink-supply tank;
>
> An ink absorbing member formed from a porous material mounted within said tank, said ink absorbing member having a region facing said opening and being compressively contained by the ink-supply tank against the ink-supply delivery port so that at least the region of the ink absorbing member facing said opening is compressed relative to at least another region of the ink absorbing member; and
>
> Said ink absorbing member substantially filling said ink-supply tank, said ink-supply tank including an inner wall surface having projections to provide a space between said ink absorbing member and said wall surface.

Seiko Epson Mem., Ex. B (emphasis added).

4 - OPINION AND ORDER

I.    <u>**Ninestar's Proposed Construction**</u>

Defendants (collectively referred to as "Ninestar") contend "being compressingly contained" should be construed to mean the ink-absorbing member[2] is (a) "*continuously subjected to forces* which distort it into a smaller shape in the ink cartridge and (b) upon removal of these forces, <u>the sponge returns spontaneously to its original shape</u>."  Emphasis added.

A.    <u>Continuously Subjected to Forces</u>.

Ninestar argues the sponges in its ink cartridges, unlike Seiko Epson's ink-absorbing members, are not compressingly contained" because they are already "semi-permanently deformed" when installed in the ink cartridge; *i.e.*, "the walls of the ink supply tank do not apply any compressive force at the time a cartridge is installed."

In contrast, Seiko Epson's ink-absorbing members are compressed by the tank lid, which, according to Ninestar, is largely responsible for compressing the [ink-absorbing member], in combination with the walls of the tank."  In addition, the claim specification describing the compression of the [ink-absorbing member] near the ink-supply port "implies that such

---

[2] In their memoranda, the parties occasionally refer to Seiko Epson's ink-absorbing member as a "sponge."  The Court has previously construed the term ink-absorbing member to mean "a porous material that absorbs ink."  In other words, it is not described specifically as a "sponge."  Accordingly, the Court uses the original term ink-absorbing member in this Opinion and Order to avoid confusion.

[compressing] forces also come from the floor and the walls of the tank."

B.  Upon removal of these forces, the sponge returns spontaneously to its original shape.

Ninestar's expert, Wayne C. Hubbell, tested Seiko Epson's ink cartridge.  When he removed the ink-absorbing member from the ink cartridge, he found it "resiliently returned to its original thickness," and, "despite the fact that each ink absorbing member was saturated with ink, the [ink-absorbing member] quickly recovered from the applied short-term deformation."

## II.  Seiko Epson's Proposed Construction

Seiko Epson contends "being compressively contained" means that the ink-absorbing member is reduced in size within the cartridge and, should be construed to mean the ink absorbing member is "*being contained [in the cartridge] in at least a partially compacted state.*"  Emphasis added.

Seiko Epson asserts it is irrelevant that a compressive force is or is not continuously applied when the ink-absorbing member is installed in the ink cartridge because the patent specification only describes that "the thicker front portion [of the ink-absorbing member] is compressed by the tank lid when the [ink-absorbing member] is filled in the tank body."  *See* Ex. B., '377 Patent at 8:68-9:2.  Seiko Epson maintains that "[a]s long as the [ink-absorbing member] is maintained in a compacted state, it is [] irrelevant whether the force that initially compressed

6 – OPINION AND ORDER

the sponge is continuously maintained over time."  Moreover, the capillary-action effect (*i.e.,* the tendency of liquid to be drawn into small tubes) is "driven by the relative pores sizes of different regions of the sponge, not by whether the sponge is under constant pressure."

Seiko Epson point outs that dependent Claim 72 describes the ink-absorbing member as "substantially filling the ink-supply tank," dependent Claim 73 clarifies "at least a portion of the ink absorbing member [is] being compressingly contained," and dependent Claim 74 further clarifies the "wall of said ink-supply tank facing said ink-supply delivery port is a cover means bearing on said ink absorbing member, when assembled to said ink supply tank to at least *apply a compressive force to effect compression of said ink absorbing member.*"  '377 Patent at 18:15-35.  Emphasis added.

According to Seiko Epson, these specifications describe that the compressive force is applied when the ink-absorbing member is first installed in order to create a "capillary action for moving ink through the ink absorbing member from an area where the pores of the ink absorbing member are on average larger to the area nearest the ink supply port where the pores on average are smaller as a result of the applied compression."  '377 Patent at 5:30-49, 7:4-31.

7 - OPINION AND ORDER

III. __Analysis__

    A.   <u>Ninestar's Proposed Construction</u>.

    The Court rejects Ninestar's proposed construction because it reads into the claim term two limitations that are not asserted or described in the claim specification (*i.e.,* (1) the ink-absorbing member is *continuously* subjected to compression that distorts it while it is encased in the ink cartridge and (2) the ink-absorbing member returns *spontaneously to its original shape* when it is removed from the ink cartridge.

    The Court finds unpersuasive Ninestar's argument that Seiko Epson's use of the word "being" immediately before the term "compressingly contained" connotes that after the ink absorbing member is installed in the ink cartridge, the ink-absorbing member is subjected to ongoing, continuous forces that distort it.

    The word "being" in its primary usage means "the state or quality of having existence." *See Am*. *Heritage Dictionary of the English Language* 163 (5th ed. 2011). There is no question that "compression" is a "state of existence" of at least some parts of Seiko Epson's ink-absorbing member when it is first installed in Seiko Epson's ink cartridge. There is, however, nothing in the claim language or specification to support Ninestar's assertion that the claim language describes ongoing compression of the ink-absorbing member. As argued by Seiko Epson, the flow of ink from

the ink-absorbing member to the ink- delivery port is the result of a capillary action resulting from the original compression that need not be the result of ongoing compression.

The Court also rejects Ninestar's construction because it imposes a limitation that the ink-absorbing member spontaneously returns to its original shape when removed from the ink cartridge. That limitation is not found in either the claim language or the claim specification. Moreover, the Court agrees with Seiko Epson that such a limitation would be irrelevant to a functioning ink cartridge.

B. <u>Seiko Epson's Proposed Construction</u>.

The Court rejects in part Seiko Epson's construction that the ink-absorbing member is "being contained [in the cartridge] in at least a partially compacted state." Although the claim focuses on the compression of an ink-absorbing member in an ink cartridge, Seiko Epson proposes a construction including the word "compacted" to describe the ink-absorbing member in the ink cartridge after it has been subjected to compression upon installation. "To compress" is defined to mean the same as "to press together" or "to make more compact by pressing." *Am. Heritage Dictionary* 379 (5th ed. 2011). Thus, the terms "compressed" and "compacted" have identical meanings in the context of Seiko Epson's ink cartridges. There is not any reason to import the term "compacted" in place of the term "compressed"

9 - OPINION AND ORDER

to describe the ink-absorbing member's state when it is first placed into the ink cartridge.

### CONCLUSION

For these reasons, the Court construes the term "being compressingly contained" in Claim 83 of Seiko Epson's '377 Patent to mean "being contained in at least a partially compressed state."

IT IS SO ORDERED

DATED this 16th day of December, 2011.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

10 - OPINION AND ORDER